UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREA DEFUSCO,     Plaintiffs, | : : : | CIVIL ACTION NO. 3:15-CV-0485 (VLB) |
| v. | : : | |
| TOWN OF WEST HARTFORD, ET AL,     Defendants. | : : | March 28, 2016 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [Dkt. 19]**

## I.  Introduction

The Plaintiff, Andrea DeFusco ("DeFusco"), brings this action against the Town of West Hartford (the "Town") and the West Hartford Board of Education (the "Board") d/b/a West Hartford Public Schools (together, the "Defendants") in a nine count Complaint alleging: (i) Retaliation for protected speech in violation of Conn. Gen. Stat. § 31-51q (Count One), (ii) Retaliation in violation of Section 504 of the Rehabilitation Act ("Section 504") (Count Two), (iii) Retaliation in violation of the American with Disabilities Act ("ADA") (Count Three), (iv) Retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count Four), (v) Retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count Five), (vi) Intentional Infliction of Emotional Distress ("IIED") (Count Six), (vii) Negligent Infliction of Emotional Distress ("NIED") (Count Seven), Misrepresentation (Count Eight), and Retaliation in violation of the Connecticut Fair Employment Practices Act ("CFEPA") (Count Nine).

**Defendants have moved to dismiss Count One as well as Counts Four through Nine and to strike Plaintiff's demand for punitive damages for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. 19]. Plaintiff did not oppose the Motion to Dismiss insofar as it sought dismissal of Counts Five through Eight.**

For the reasons that follow, Defendants' Motion to Dismiss is GRANTED. Plaintiff's case may proceed with respect to Count Two and Count Three only.

II.   Factual Background

The following facts and allegations are taken from Plaintiff's Amended Complaint. [Dkt. 12].

The Plaintiff alleges that, on or about August 27, 2012, she began working for the Defendants as an Interim Special Education Teacher , filling-in for a teacher who was on leave. [Dkt. 12, Am. Compl. ¶ 6]. Plaintiff signed a contract for the 2012-2013 school year which terminated on June 30, 2013. *Id.* Plaintiff alleges that during the interview process, she spoke with a Department Supervisor, Marianne Sullivan, who, in response to Plaintiffs concerns, represented to Plaintiff that she "should not be concerned" with her "interim" status because Ms. Sullivan "would find a position" for Plaintiff. *Id.* ¶ 7. Ms. Sullivan also stated Plaintiff "would have the opportunity to continue with her employment with the school system" beyond the end of the contract date. *Id.*

Plaintiff was assigned to a classroom with six students with "serious disabilities." *Id.* ¶ 10. Plaintiff vaguely alleges that the school administration "looked down upon her classroom, the students and the para-professionals, who

were largely African American and Spanish" and that she "witnessed events which highlighted that her students were not treated equally . . . [and] that the para-professionals were not treated fairly." *Id.* ¶ 11.  However, the Amended Complaint does not describe any specific conduct to support these legal conclusions.

Plaintiff alleges that she was retaliated against because of her "advocacy" on behalf of her students and para-professionals and describes three specific statements.  First, Plaintiff alleges that she raised to the school nurse her concerns about safety procedures for a particular student who was having seizures. *Id.* ¶ 12.  She alleges that the school nurse advised her not to worry about it because the student was not an American Citizen. *Id.*  Then, in September of 2012, Plaintiff emailed her supervisor to raise concerns about the safety of her students due to lack of staffing. *Id.* ¶ 16.  After her e-mail was "ignored," Plaintiff sent an e-mail to the school's administrators expressing "safety concerns for students and staff members" due to lack of staff and deficiencies in fire safety procedures. *Id.* ¶ 17.

Plaintiff alleges several instances of retaliation. She alleges that Defendants did not allow her to participate in Physical Management Training ("PMT") and told parents that she was responsible for problems in the classroom. *Id.* ¶¶ 21-22.  Plaintiff also alleges, on the one hand, that Defendants refused to conduct three legally-mandated observations of her classroom performance, and, on the other hand, alleges that her classroom performance "was unfairly monitored and criticized." *Id.* ¶ 21.  Finally, Plaintiff alleges that she was

informed that her contract would not be renewed, and that Defendants "did not keep their promise" to continue Plaintiff's employment. *Id.* ¶ 21.

On or about August 26, 2013, Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and an Affidavit of Illegal Discriminatory Practice (the "CHRO Complaint"). *Id.* ¶ 2. Plaintiff filed this case on April 2, 2015. [Dkt. 1].

### III. Standard of Review

#### a. Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting Iqbal, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting Iqbal, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

## IV.    Discussion

Plaintiff did not oppose the Motion to Dismiss insofar as it sought dismissal of Counts Five through Eight of her Complaint, alleging violation of the FMLA, intentional and negligent infliction of emotional distress, and misrepresentation and amendment would have been futile. As such, these claims may be considered abandoned. *See* Local Rule 7(a)(1)(stating that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143-44 (E.D.N.Y. 2014)(noting that "courts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute

an abandonment of those claims); *Marrow v. Amato*, No. CIV. 3:07CV401 (PCD), 2009 WL 350601, at *7 (D. Conn. Feb. 12, 2009)(Plaintiff abandoned claim by "failing to provide any response to [the Defendant's argument in its Motion] . . . or to address [the] claim in any manner."); *Coger v. Connecticut*, 309 F.Supp.2d 274, 280 (D.Conn.2004) (the court can consider a § 1981 claim abandoned merely because the plaintiff failed to respond to the defendant's argument in favor of summary judgment).

But even if Plaintiff had opposed dismissal of her FMLA and state law claims, such opposition would have been futile because the Complaint does not allege sufficient facts to overcome the Motion to Dismiss for failure to state a claim.  In particular, the Complaint did not specify which conduct was alleged to have been in violation of the FMLA.  Plaintiff does allege that she took two weeks of medical leave and that during this period, Defendants sent a letter to the parents of her students "essentially" blaming Plaintiff for problems in the classroom.  To the extent this can be read as an allegation of retaliation under the FMLA, Defendants note that Plaintiff was not an "eligible employee" under the FMLA, as an eligible employee is one "who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested."  29 U.S.C. § 2611(2)(A).  Plaintiff does not allege that she worked for Defendants for at least one year prior to her medical leave.  On the contrary, she admits that her employment contract was not renewed after the it expired at the end of the 2012-2013 academic year.  [Compl. ¶ 24].

As to Plaintiff's state law claims, Defendants note that, pursuant to Conn. Gen. Stat. § 52-577n(a)(2), municipalities "cannot be held liable for the intentional torts of its employees, agents and servants." *Pane v. City of Danbury*, 267 Conn. 669, 685-86 (2004); *O'Brien v. Meriden Bd, of Educ.*, No. 3:13-CV-1521 (VLB), 2014 WL 4494390, at *2 (D. Conn. Sep. 12, 2014).

The Court grants Defendant's Motion to Dismiss as to the unopposed portion of the Motion seeking dismissal of Plaintiff's FMLA and state law claims. Counts Five, Six and Seven of the Amended Complaint are DISMISSED.

Plaintiff has opposed dismissal of her claims for retaliation for protected speech in violation of Conn. Gen. Stat. Sec. 31-51q (Count One), her Title VII Retaliation claim (Count Four) and her CFEPA Retaliation claim (Count Nine). The Court considers each in turn.

    a.  <u>Retaliation in Violation of Conn. Gen. Stat. § 31-51q (Count One)</u>

Defendants argue that Plaintiff's Section 31-51q retaliation claim should be dismissed because "the renewal of her teaching contract was not, as a matter of law, discipline or discharge." [Def.'s Mem. at 5].

Section 31-51q imposes liability upon:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state....

Conn. Gen. Stat. § 31-51q. The Connecticut courts that have examined the issue have held that teachers who are on a non-tenured contract that is not

renewed are not "discharged" within the meaning of Sec. 31-51q.  *See Sans-Syzmonik v. Hartford Public Schools*, No. HHDCV146051355S, 2014 WL 7156776 (Conn. Super. Ct. Nov. 7, 2014) ("the non renewal of a non tenured teacher's contract does not constitute a `discharge' pursuant to § 31-51q."); *Douglas v. Board of Trustees for Conn. State University*, No. CV 950372571, 1999 WL 240736, at *3 (Conn. Super. Ct. Apr. 8, 1999) (failure to renew contact not actionable under § 31-51q).

Plaintiff argues, without citation to authority, that she should nonetheless be permitted to proceed with her Section 31-51q claim because "she has also alleged that the Defendants promised her continued employment and breached that promise, something that is tantamount to a discharge." [Pl.'s Opp. Mem. at 8-9].  Plaintiff also argues that the Defendants ignored their obligation to observe the Plaintiff in the classroom and refused to allow Plaintiff to participate in PMT training and that these omissions constituted "discipline" within the meaning of the statute.  *Id.* at 9-12.

Hboth claims fail because "discipline" within the meaning of Section 31-51q "requires an affirmative act by the employer and does not include the withholding of a benefit, even if promised."  *Matthews v. Department of Pub. Safety*, No. HHDCV116019959S, 2013 WL 3306435, at *13 (Conn. Super. Ct. May 31, 2013).  And although courts can infer "discipline" when a Plaintiff alleges "a collection of smaller incidents and conduct," such conduct "must be affirmative in nature."  *Lynch v. Ackley*, No. 3:12-CV-537 (MPS), 2014 WL 4782812, at *24 (D. Conn. Sep. 24, 2014) (citing *Matthews*, 2013 WL 3306435, at *13).

The Second Circuit has observed that "discipline" under § 31–51q "involves affirmative acts of punishment that (at least while the punishment is being inflicted) leave the recipients in a less happy state than that which they enjoyed before the punishment began." *Avedisian v. Quinnipiac Univ.*, 387 Fed. App'x 59, 61 (2d Cir.2010) (*quoting Bombalicki v. Pastore*, No. 378772, 2000 WL 726839, at *1 (Conn.Super.Ct. May 10, 2000)).  Here, defendants' failure to allow Plaintiff to participate in PMT training and observe Plaintiff's teaching, even if promised or required, are omissions and not affirmative acts and did not leave Plaintiff in any worse position than she was prior to the alleged omissions.

Plaintiff's argument that the allegation that she was promised continued employment distinguishes her case on the issue of "discharge" also misses the mark.  Essentially, Plaintiff alleges that during her initial interviews two school district employees assuaged her concerns about the interim nature of her position by offering to help "find a position for Plaintiff" if her contract was not-renewed in order to allow her the "opportunity to continue with her employment with the school system."  [Compl. ¶¶ 7, 9].  Such promises by individual employees of the Defendants do not establish a guaranteed right – by contract or by statute – – to continued employment in the first job after the expiration of Plaintiff's tenure such that non-renewal of her contract for the first job can be transformed into a "discharge" within the meaning of Sec. 31-51q.[1]  Plaintiff's

---

[1] Even if the Plaintiff had sufficiently alleged discharge or discipline pursuant to Sec. 31-51q, the Court agrees with Defendants that it is unlikely that Plaintiff has adequately alleged protected speech because her alleged speech was pursuant to her official duties as a schoolteacher and concerned matters affecting her employment.  *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Adams v. N.Y. State*

claim for retaliation in violation of Conn. Gen. Stat. § 31-51q (Count One) is DISMISSED.

### b. Retaliation in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count Four) and Retaliation under CFEPA (Count Nine)

The retaliation provision of Title VII makes it unlawful to retaliate against an employee, "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, CFEPA's retaliation provision prohibits retaliation which occurs "because such person has opposed any discriminatory employment practice." Conn. Gen. Stat. § 46a-60(a)(4). Plaintiff's allegations do not satisfy either standard.

Defendants argue that "advocating on behalf of non-employees (i.e., students) . . . does not amount to a protected activity" under Title VII, and, to the extent Plaintiff claims to have advocated on behalf of African-American and Hispanic "paraprofessionals" working in her classroom, Plaintiff did not timely present such a claim to the CHRO. [Def.'s Mem. at 10-12].

Plaintiff concedes by omission to dismissal of her Title VII claim with respect to the conduct relating to advocacy on behalf of her students. However,

---

*Educ. Dep't*, No.08 Civ. 5996(VM)(AJP), 2010 WL 624020, at *24–25 (S.D.N.Y. Feb. 23, 2010) (teachers' internal complaints about, *inter alia*, deplorable conditions, unruly students, classroom overcrowding, and teacher schedules, were not protected by First Amendment). Plaintiff's argument that "it is entirely likely that the Connecticut Supreme Court will not adopt *Garcetti* to free speech claims under the Connecticut State Constitution" is speculative at best.

with respect to her advocacy on behalf of paraprofessionals, Plaintiff argues, without citation to relevant authority, that her claim should be allowed to proceed, despite her failure to raise the issue with the CHRO, because Plaintiff was proceeding *pro se* at that stage.  Plaintiff argues that, liberally construed, the "Title VII box" on her CHRO Complaint was checked, and, in her accompanying affidavit, Plaintiff referenced sending e-mails regarding "staffing issues" and the "issue of safety" in her classroom.  [See Dkt. , Ex. 2, CHRO Complaint].  In her Opposition to the Motion to Dismiss, Plaintiff argues that these references "reflected . . . the disparate treatment directed to the staff."  [Pl.'s Mem. at 19].

      Many would-be litigants are *pro se* at the time that they file CHRO or EEOC Complaints.  This is why *pro se* status is not a *per se* absolution of the duty to exhaust administrative remedies.  Instead, the exhaustion inquiry focuses on the extent to which a would-be Plaintiff presented *factual allegations* sufficient to trigger an agency investigation on the cause of action that a Plaintiff later argues was properly presented.  *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) ("EEOC charges frequently are filled out by employees without the benefit of counsel . . . their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.").  The fact that Plaintiff did not have an attorney when she neglected to mention any *facts* suggesting that she opposed a racially or other ethnically discriminatory practice does not excuse such failure.  Even read liberally, the CHRO Complaint focuses entirely on issues of 'safety' and 'staffing' that could not possibly have put the agency on notice of any allegedly ethnic

discriminatory practice.  Plaintiff's Title VII retaliation claim (Count Four) and CFEPA retaliation claim are DISMISSED.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss [Dkt. 19] in its entirety. Count One and Counts Four through Nine of the Amended Complaint are DISMISSED.[2]  Plaintiff's case may proceed with respect to Count Two, her Section 504 Retaliation Act Claim and Count Three, her ADA Claim.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 28, 2016

---

[2] Plaintiff did not oppose Defendant's Motion to Dismiss with respect to her claim for punitive damages, except to argue that Plaintiff could potentially recover such damages if Plaintiff's Sec. 31-51q retaliation claim were to proceed.  [Pl.'s Opp. Mem. at 21].  Even if that were true, the Court has dismissed Plaintiff's Sec. 31-51q claim, and, as such Plaintiff may not recover punitive damages on her remaining claims.